## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MOLLY JARESKE, on behalf of her minor child, C. J., | **CASE NO.** 8:24-cv-151 |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMAND** |
| BENNINGTON PUBLIC SCHOOL DISTRICT, by and through its Board of Education; SATARAH REARDON, in her official and individual capacity; GARET WRIGHT, in his official and individual capacity; JANNA POHLMAN-NOEL, in her official and individual capacity; HANNAH KNIGHT, in her official and individual capacity, CHRISTINE YOUNG, in her official and individual capacity; and DOE DEFENDANTS 1-20 in their individual and official capacities, | |
| *Defendants.* | |

## COMPLAINT

### I.    INTRODUCTION

This is an action arising from abuse through teachers and staff occurring at Heritage Elementary School in the Bennington Public School District. Plaintiff is seeking damages for Defendants' violation of due process. Defendants are also

responsible for battery, false imprisonment, gross negligence, intentional infliction of emotional distress, and negligence.

## II.    PARTIES

1.    C. J. is a student at Heritage Elementary School ("HES") within the Bennington Public School District ("BPSD").  C. J. at all material times relevant to this litigation has been, and is presently, a minor child.

2.    The Complaint is filed by and through Molly Jareske ("Plaintiff"), the mother of the minor child, with the consent of C. J.. Plaintiff is a resident of the State of Nebraska.

3.    Defendant Bennington Public School District through its Board of Education ("BPSD") is a public school district based in Bennington, Nebraska.

4.    Defendant Satarah Reardon ("Reardon") is a general education teacher at Heritage Elementary School.  Reardon is employed by Defendant and at all times relevant to this litigation.

5.    Defendant Garet Wright ("Wright") is a special education teacher at Heritage Elementary School.  Wright is employed by Defendant and at all times relevant to this litigation.

6.    Defendant Janna Pohlman-Noel ("Noel") is a special education teacher at Heritage Elementary School.  Noel is employed bey Defendant and at all times relevant to this litigation.

7.     Defendant Hannah Knight ("Knight") is a special education teacher at Heritage Elementary School.  Knight is employed bey Defendant and at all times relevant to this litigation.

8.     Defendant Christine Young ("Young") is a special education teacher at Heritage Elementary School.  Knight is employed bey Defendant and at all times relevant to this litigation.

9.     Doe Defendants 1-20 ("Doe Defendants") are employees or agents of Defendant BPSD that caused harm to Plaintiff which are subject to this lawsuit. At this time, their names and whereabouts are unknown.

### III.   JURISDICTION & VENUE

10.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

11.     In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims for Intentional and Negligent Infliction of Emotional Distress.

12.     Defendant conducts business in the State of Nebraska.

13.     Individual Defendants were employees of BPSD at all relevant times herein and personally violated certain rights and policies, the effects of which were felt in the State of Nebraska.

14.     Venue in this action is proper in the District of Nebraska as the events relevant to this action occurred primarily within this court's geographical boundaries.

## IV.    FACTUAL ALLEGATIONS

15.     At all times relevant to this action C.J. was a student at Heritage Elementary School ("HES") in the Bennington Public School District pursuing his high school diploma.

16.     C.J. enrolled in HES on January 5, 2021.

17.     Prior to Plaintiff relocating and enrolling C.J. at HES, Plaintiff attended Hillrise Elementary School in the Elkhorn School District.

18.     C. J. suffers from the disability of autism and qualifies as an individual with a disability under the Individuals with Disabilities Education Act ("IDEA").

19.     On March 11, 2021, two months after being at HES, Defendant's school psychologist Adam Sempek ("Sempek") and special education teacher Cheri Anderson ("Anderson") evaluated C. J for special education services.

20.     Defendant implemented a 504 Plan under Section 504 of the Rehabilitation Act of 1973 ("504 Plan").

21.     HES utilized the 504 Plan for the remainder of the 2020-2021 academic school year.

22.    On October 14, 2021, C.J. was reevaluated for the 504 Plan for the 2012-2022 school year.

23.    During the October 14, 2021, evaluation, C. J. was diagnosed with autism and emotional disturbance.

24.    C.J.'s evaluation provided that C.J. had "deficits in attention and/or motor/impulse control; is argumentative trouble tolerating changes in routine, overreacts to certain sensory experiences".

25.    On October 18, 2021, an MDT report was completed by Defendant and C. J. 's 504 Plan converted to an Individual Education Plan ("IEP").

26.    On August 16, 2022, Defendant held its' annual back to school night. On this night, Plaintiff met with Defendant Reardon, C. J. 's primary second grade teacher for the 2022-2023 academic school year and informed Defendant Reardon that C. J. had an IEP in place and that change could be difficult.

27.    Defendant Reardon assured Plaintiff that she had spoken to Mallory Fink ("Fink"), C. J. 's first grade teacher and was familiar with C. J. 's IEP.

28.    On August 17, 2022, C. J. began his first day of second grade for the 2022-2023 academic year.

29.    C.J.'s IEP was not reevaluated for the 2022-2023 academic year.

30.    On August 17, 2022, Plaintiff and Reardon corresponded numerous times via email regarding C. J. 's IEP and the breaks that would be offered.

31.    On August 19, 2022, Plaintiff emailed Reardon providing her background on C. J. 's history and discussed specials (i.e. music class, art class, gym class).

32.    Plaintiff mentioned a reward system and daily chart that were both accommodations on his IEP.

33.    Pursuant to C.J.'s IEP, specials were to be added in gradually as tolerated by C.J..

34.    In the August 19, 2022, correspondence Reardon stated all specials would be tried to see how he acclimated instead of gradually adding them in.

35.    On September 8, 2022, Plaintiff received a call providing C. J. received his first office referral for throwing dirt in another student's face while at recess. C.J. was to complete the remainder of the day in the confines of Defendant's main office.

36.    Plaintiff immediately requested a meeting to ensure that all were on the same page with C. J's IEP.

37.    On September 16, 2022, at approximately 9:00am, Defendant Reardon contacted Plaintiff during one of C. J. 's classes.

38.    During class C. J. wanted to sharpen a pencil and became escalated when he was told no, and that a pencil that was already sharpened would need to be borrowed.

39.    Defendant Reardon stopped in the middle of her class, in front of all her students, and called Plaintiff.

40.    Plaintiff was alarmed by Defendant Reardon's behavior and that she would find this type of intervention beneficial to C. J.

41.    Defendant Reardon tried having C. J. speak to Plaintiff, in front of his entire class. C. J. refused.

42.    Plaintiff and Principal Therese Nelson ("Nelson"), met to discuss the implementation of C. J. 's IEP on September 16, 2022.

43.    Plaintiff expressed her concern to Nelson and requested a reasoning to C. J.'s IEP not being implemented.

44.    Nelson responded that Defendant Reardon is simply given an "IEP at a glance", which consisted of three (3) pages that does not contain the entirely of Plaintiff's IEP and accommodations to be provided by Defendants.

45.    On September 16, 2022, during Plaintiff's meeting with Nelson, Plaintiff highlighted C.J. 's IEP and the accommodations Defendants had neglected.

46.    At student pick-up on September 16, 2022, Reardon held up the highlighted portion of C. J.'s IEP to Plaintiff and said, "this is the first time I've ever seen this."

47.     On September 20, 2022, Plaintiff met with three of BPSD's special education teachers, Defendants Janna Pohlman-Noel ("Noel"), Wright and Reardon, as well as Nelson to discuss the implementation of C.J. 's IEP.

48.     During the meeting, Plaintiff stressed the importance of C.J. establishing trust through teamwork exercises. Defendants on the other hand discussed not having children engaged with C.J., as well as implementing several new accommodations from the daily IEP sheet.

49.     At the meeting Defendant Reardon continued to push C.J. to go to all specials, even though this is a trigger for C.J. and optional on his IEP.

50.     Plaintiff reiterated the importance of the IEP being fully implemented while Defendant Reardon reiterated that she has only seen the "IEP at a glance" and justifies her actions up to this point as a result.

51.     On September 28, 2022, Plaintiff, Nelson and Defendant Wright met to further discuss C.J. 'S IEP.

52.     Once again, the "IEP at a glance" was provided. Plaintiff reinforced the importance of the entire IEP being implemented.

53.     Plaintiff pointed out triggers for C.J., one of those triggers being Gumball Math, a timed math worksheet.

54.     Plaintiff requests that paraprofessionals ("para") be utilized during Gumball Math.

8

55.    Defendant Wright states he needs to check the schedule and that "our paras are focused on life skills, and we don't have specific resource para, so we really don't have anyone to just send down".

56.    Plaintiff and Defendant Wright agree to modifying gumball math as an accommodation for C.J.

57.    On October 5, 2022, C. J., Plaintiff, Fink and Defendants Reardon, Nelson, and Wright held a meeting to discuss the para support reviewed during the September 28, 2022, meeting.  During this time, it was also suggested and agreed that C.J. was to have a para help with C.J.'s transition from recess back to the classroom.

58.    A document regarding the paras and the "actual times" C. J. would have para support was circulated. The para schedule changed every 15 minutes.   C. J. was not good with change as was mentioned in his IEP.

59.    On October 18, 2022, during the class "gumball math", C. J. became overwhelmed and took his break cards and rubbed the edges on his peers.

60.    Gumball math was to either be skipped or modified, yet Reardon failed to follow through on either of those options.

61.    On October 18, 2022, C. J. received his third office referral for the year and an in-school suspension ("ISS") for October 19, 2022.

9

62.    Defendant never called Plaintiff to discuss the incident that occurred. It wasn't until Plaintiff picked up C. J. from school that Defendant informed Plaintiff of the incident.

63.    Nelson advised Plaintiff that C. J. would spend the following day in ISS under the direct instruction of Fink.

64.    On October 19, 2022, instead of C. J. being placed in ISS with Fink as stated, Nelson placed C. J. in a first-grade classroom for the entire day.

65.    On October 19, 2022, C.J. received his fourth office referral for aggressive behavior. There were three encounters of aggressive behavior. All encounters were at recess, where C.J.'s IEP failed to be implemented as no para was provided.

66.    Parents of students on the receiving end of C. J. 's behavior that day went and filed a report with the Sheriff's Office.

67.    Plaintiff was informed that C. J. was being suspended for October 20, 2022.

68.    On October 21, 2022, Defendants Wright, Reardon, and Plaintiff had an IEP review.

69.    On October 22, 2022, Plaintiff emailed Defendant retracting her signature from the IEP review.  Nelson was to sign and authorize the IEP, even though she was not present at the review.

70.     During this time Defendant Nelson was replaced by Shannon Thoendol ("Thoendol").  Thoendol is the Assistant Director of Curriculum, Instruction, and Assessment. Thoendol advised that the two-day suspension was not only for the music incident but also for the incident at recess.

71.     As of October 25, 2022, Plaintiff learned that due to Defendant's failure to implement C.J.'s IEP and protect both C.J. and the other students, three parents had gone to the Sheriff's Office and made reports against C. J.

72.     On October 26, 2022, Plaintiff met with Student Services Representative Whitney Fagan ("Fagan"), Thoendol and Nelson. It was at this meeting that Defendant introduced the idea of the "reteaching room".

73.     On October 27, 2022, Plaintiff requested new evaluations of C. J. and for the school psychologist to be present at the next meeting.

74.     On October 31, 2022, Plaintiff and Defendant had an IEP meeting.  A thorough accommodation and interventions list, along with C.J. 's entire IEP, was reviewed.

75.     On November 1, 2022, C. J. and his sister returned to school.  Out of concerns for the children's safety, the school had Plaintiff drop of the children at the school's back entrance.

76.     On November 1, 2022, Plaintiff emailed ALL first and second grade teachers to see where C. J. was going to be placed.

11

77.     On November 2, 2022, C.J. attended school for a half day in the seclusion room.

78.     On November 3, 2022, Plaintiff met with Assistant Superintendent Matthew Blomenkamp ("Blomenkamp") to determine C.J. 's placement over the prior weeks of school as C. J. exact placement was still unknown to Plaintiff.

79.     November 3, 2022, C. J. attended school for a half day in the secluded classroom.

80.     On November 4, 2022, Plaintiff met with Communication Coordinator, Stacy Hawn ("Hawn") to discuss C.J. 's movement throughout the building.

81.     November 4, 2022, C.J.'s attended school for a full day alone in a secluded room with a Special Education Teacher ("SPED").  This was the first day C.J. advised that he was forcibly restrained by Defendants Noel, Wright, and Knight. The restraint was also recorded in the school logbook.

82.     On November 7, 2022, C.J.'s attended school in the seclusion room. Plaintiff was called at 10:30am to pick C.J. due to aggressive behavior.  C.J. stated he was forcibly restrained twice on this day.

83.     On November 8, 2022, C.J. attended a full day of school in the seclusion room.

84.     On November 11, 2022, C.J. attended a full day of school in the seclusion room with two SPED substitutes as Defendant Knight and Defendant Noel were absent.  C.J. had his best behavior recorded in seclusion this day.

85.     On November 11, 2022, Plaintiff's request for a new evaluation was discussed with the assistant Director of Student Services, Jodie Green ("Green").

86.     Plaintiff requested that C.J. be removed from the seclusion ("reteaching") room.

87.     Defendants Noel and Wright, along with Green and Thoendol all disagreed, providing that HES could meet C.J. 's needs.

88.     On November 14, 2022, C. J. was physically restrained twice during the course of the school day.  School documents reported Defendant Knight and Defendant Nelson were present.

89.     November 15, 2022, C. J. 's eighth day in seclusion, Plaintiff was called to pick-up C. J. at approximately 10:50am. The early pick-up request was due to aggressive behavior.

90.     November 16, 2022, C.J.'s ninth day in seclusion was another early dismissal.  Defendant Knight was present that day.

91.     On November 17, 2022, Plaintiff made a formal complaint with the Department of Education.

92.     On November 18, 2022, Plaintiff requested an onsite observation of C. J. while in the seclusion room. The request was denied.

93.     At pick up on November 18, 2022, Plaintiff noticed marks on C. J. 's arms.  C. J. stated that Defendant Wright "hurt me today".  Plaintiff immediately called the police.

94.     C. J. described the events of November 18, 2022, and informed Plaintiff that while attempting to leave isolation, Defendant Wright pushed the door back into C. J. while screaming at C. J. to sit down.  The pushback was so excessive it left red marks all over C. J. 's arms.  Defendant Knight, Defendant Noel, as well as a para were all present.

95.     C. J. further explained to Plaintiff that "restraints" had been taking place since November 4, 2022.

96.     Defendants Noel, Knight and Young repeatedly took part in the restraints.

97.     Defendants "restraints" of C.J. typically involved two  adults standing on either side of C.J. while each holding one of his arms in opposite directions, stepping on his feet to hold him in place and pulling his arms in outward with force.

98.     The "restraints" caused C.J. both physical and emotional harm.

99.     On November 18, 2022, C.J. was restrained three times during the school day.

100.   On November 28, 2022, Plaintiff requested the results of the investigation. Plaintiff was advised that the investigation regarding the injury to C. J. 's arm was complete but refused to provide Plaintiff with the results.

101.   Plaintiff asked for documentation and data collected and reasoning for why C. J. was restrained. Defendant stated that two staff members were there to assist C. J. when behaviors escalated to help assist C. J.  with regulation strategies.

102.   November 18, 2022, was C.J. 's last day in attendance at HES.

103.   As a result of Defendants actions, Plaintiff suffers from ongoing injuries.

## Respondaet Superior and Agency

104.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

105.   Under Federal law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

106.   At all times relevant to this action, all individual Defendants were employed by HES. Some of their acts and omissions relevant to this litigation were undertaken within the scope of their employment with HES.

107.   At the time of this Complaint, only the individual Defendants themselves are aware of the exact role that each individual Defendant played in the

events that are the subject of the lawsuit. For this reason, only the individual Defendants know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

## CAUSES OF ACTION

## COUNT I - VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

108.   Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

109.   Defendant HES is a public school within the BPSD that receives federal funding and are therefore subject to Title III of the ADA.

110.   Plaintiff suffers from a disability and is diagnosed with autism.

111.   Plaintiff's disability limits major aspects of his life, making many everyday activities difficult for him, especially the ability to focus, properly interact with those around him and control his aggression.

112.   Plaintiff therefore is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

113.   Title III of the ADA prohibits the discrimination of a person on the basis of disability.

114.   Defendants discriminated against Plaintiff when they did not implement his IEP, effectively denying him access to an equal education.

16

115.    Defendants were fully aware of Plaintiff's disability.

116.    Defendants discriminated against Plaintiff on the basis of his disability by intentionally ignoring Plaintiff's IEP.

117.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained and continues to sustain injuries and damages in the form of an extensive disciplinary record and police reports filed against him which will affect Plaintiff's future academic and professional career.

118.    Defendants' inobservance of the law and its' effects on Plaintiff are ongoing and continuous, requiring declaratory and injunctive relief and therefore employing 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting Defendants' wrongful conduct, full expungement of any student code of conduct violation on Plaintiffs' records, and expungement of any bad grades received when Plaintiff was not provided an IEP;

(c)    Enter judgment against Defendants and in favor of Plaintiff for all cost sustained in connection with the prosecution of this action, including attorney's fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

119.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

120.    Section 504 of the Rehabilitation Act, 29 U.S.C.S. § 794 bars all federal funded entities from discriminating based on disability. Section 504 states, in relevant part:

> *No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C.S. § 794(a).*

121.    As a public school receiving federal funding, Defendant HES is subject to Section 504 of the Rehabilitation Act.

122.    Plaintiff is a disabled person who has been diagnosed with autism.

123.    Despite his disabilities, Plaintiff was able to succeed in his classes in which his IEP was honored, as observed by his teachers and peers.

124.   Plaintiff therefore was an otherwise qualified individual to receive an education at HES. Plaintiff was denied his right to an education because of his autism.

125.   Defendants discriminated against Plaintiff when they did not implement his IEP, effectively denying him access to an equal education.

126.   Defendants were made aware of Plaintiff's need for an IEP, an IEP was implemented and therefore were fully aware of Plaintiff's disability.

127.   Defendants discriminated against Plaintiff on the basis of his disability by intentionally ignoring Plaintiff's IEP.

128.   As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained and continues to sustain injuries and damages in the form of an expulsion which will affect Plaintiff's future academic and professional career.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)   Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)   Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting Defendants' wrongful conduct, full expungement of any student code of conduct violation on Plaintiffs'

records, and expungement of any bad grades received when Plaintiff was not provided an IEP;

(c)    Enter judgment against Defendants and in favor of Plaintiff for all cost sustained in connection with the prosecution of this action, including attorney's fees; and

(d)    Grant such other and further relief as justice requires.

## COUNT III – VIOLATION OF DUE PROCESS UNDER
## 42 U.S.C. § 1983

129.    Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

130.    The Fifth and Fourteenth Amendments of the U.S. Constitution provides, in pertinent part, that no person shall be deprived of life, liberty, or property without the due process of law.

131.    School children have a liberty interest in their bodily integrity protected by the Due Process Clause of the Fourteenth Amendment.

132.    "We believe that a substantive due process claim in the context of disciplinary corporal punishment is to be considered under the following test: 1) the need for the application of corporal punishment; 2) the relationship between the need and the amount of punishment administered; 3) the extent of injury inflicted; and 4) whether the punishment was administered in a good faith effort to maintain

discipline or maliciously and sadistically for the very purpose of causing harm."
*Wise v. Pea Ridge Sch. Dist*., 855 F.2d 560, 564 (8th Cir. 1988)

133.   As such, Defendants violated C.J.'s right of bodily integrity by substantially harming him.

134.   Defendants were giving the impression to act in their role as school employees, therefore acting under the color of law.

135.   Defendants, as persons working with children on a daily basis were aware that C.J. was entitled to a liberty interest in bodily integrity.

136.   Plaintiff suffered bodily harm, including physical pain, bruising on his body, and mental anguish.

137.   C.J. has been denied his due process rights by Defendants in violation of the Fifth and Fourteenth Amendments in that:

    a. Defendants Wright forcefully slammed the door on C.J. leaving marks on C.J..'s arms;

    b. Defendants Wright, Noel, Knight and Young, on multiple occasions standing on either side of C.J. while each holding one of his arms in opposite directions, stepping on his feet to hold him in place and pulling his arms outward with force.

      c.   Defendants failed to inform C. J.'s mother of the ongoing restraints utilized against C.J., subjecting C.J. to further emotional distress and continued physical pain.

138.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer bodily harm as well as severe emotional distress.

139.   The actions of Defendants violated the provisions of 42 U.S.C. §1983 in that they knowingly and willfully violated the civil rights of Plaintiff.

140.   Defendant BPSD as a public school district is vicariously responsible for actions of employees acting within the scope of their employment, requiring injunctive relief.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)     Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, physical harm, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)     Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants;

22

(c)     Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)     Grant such other and further relief as justice requires.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues stated in this action.

Dated: April 25, 2024

Respectfully Submitted,

Keith Altman, Esq.
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Tel: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorney for Plaintiffs*